UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CONSUELO RIZO, )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner of )<br>Social Security, )<br>       Defendant. ) | CAUSE NO.: 2:21-CV-51-JPK |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 19]. Plaintiff Consuelo Rizo requests that the Court reverse the June 3, 2020 decision of the Administrative Law Judge (ALJ) denying her claims for disability benefits, and remand to the agency for further proceedings. For the following reasons, the Court grants Plaintiff's request.

**PROCEDURAL BACKGROUND**

On January 31, 2019, Plaintiff applied for disability benefits and supplemental security income. She initially alleged disability beginning in November 2013, but later amended the onset date to January 27, 2015. Plaintiff's applications were denied initially and on reconsideration. She requested a hearing, which was held before an Administrative Law Judge (ALJ) on February 10, 2020. On June 3, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

    1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2017.

    2.    The claimant has not engaged in substantial gainful activity since January 27, 2015, the amended alleged onset date.

    3.    The claimant had the following "severe" combination of impairments: degenerative disc disease of the lumbar and cervical spine, degenerative joint

---

[1] These findings correspond to the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

disease of the bilateral shoulders, degenerative joint disease of the right knee, inflammatory arthritis, fibromyalgia, obesity, depression, anxiety, attention deficient hyperactivity disorder and substance abuse disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasional overhead reaching with bilateral upper extremities; no more than occasional exposure to hazards, such as dangerous moving machinery and unprotected heights; no more than occasional exposure to loud noise as defined by the SCO; can understand, remember, and carry out simple tasks, make simple work-related decisions, and deal with occasional changes in work processes and environment; and have occasional interaction with coworkers, supervisors and the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was [. . .] 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant was "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 13, 2013, through the date of this decision.

(AR 20-32)[2].

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that she suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleged that she is severely disabled: among other symptoms, she alleged debilitating back pain, which was a 10 out of 10 (*see*, *e.g.*, AR 733); "constant, aching pain" throughout her body (AR 53); a need to take breaks from daily activities every 10 to 15 minutes (AR 61); inability to lift anything more than a bottle of shampoo or hairspray (AR 56); inability to concentrate on reading for more than five minutes (AR 53); constant, debilitating headaches every day (AR 53-54); panic attacks four times a week (AR 61); and daily bouts of depression that can last all day (AR 62-63), among other symptoms.

The ALJ found, generally, that Plaintiff's symptoms were not as bad as she alleged, and two state agency consultants opined that she could do light work with some physical limitations (AR 92-105, 121-131). The ALJ found these opinions persuasive (AR 29-30), and limited Plaintiff to light work with further restrictions (AR 33, 35). The ALJ did not accept[3] any medical opinions about Plaintiff's mental functioning, but the RFC limited her to simple tasks, occasional workplace changes, and occasional interaction with others. (AR 24-25).

Plaintiff argues the decision does not adequately account for her mental impairments, fails to explain the physical RFC findings, and that the ALJ erred in the assessment of Plaintiff's pain, daily activities, and treatment history.[4] Pl. Br. 8-24. The Court disagrees with much of Plaintiff's argument, because the ALJ made clear why some of Plaintiff's allegations were inconsistent with the medical evidence. But having properly rejected those allegations, the ALJ failed to explain how she came up with the ultimate result in the RFC. For the reasons described below, remand is required.

---

[3] The ALJ rejected the state agency opinions on Plaintiff's mental functioning as unpersuasive. (AR 30).

[4] Because the case is remanded on other grounds, the Court does not address Plaintiff's argument that the terms of former Commissioner Andrew M. Saul's appointment render the ALJ's decision invalid. *See* Pl. Br. 24-25.

5

I.      **Mental Impairments and Headaches**

As noted above, Plaintiff alleged debilitating daily anxiety, depression, panic attacks, and headaches. She described not being able to focus for more than five or ten minutes at a time. (*See*, *e.g.*, AR 269 (reporting inability to finish a conversation or a movie, or follow written instructions well), 476-78 (alleging "low energy, decreased interest level, low motivation, and poor focus. Feeling depressed all day, most days")).

The ALJ analyzed Plaintiff's mental condition at step three, and repeated this analysis in the context of the RFC. (AR 23-24, 30-31). The ALJ found that Plaintiff had "moderate" limitations in the domains of concentration, persistence, and pace, understanding, remembering, or applying information, and interacting with others, and "mild" limitations in her ability to manage herself. Summarizing, the ALJ found: "The claimant's mostly normal mental examinations and her improved mental status when she is on her medications is evidence that shows she is not as severe as she claims. She is highly functional." (AR 31).

That is a good explanation for some of the ALJ's findings. For example, on the issue of Plaintiff's concentration, the ALJ noted that Plaintiff was capable of tasks that would seem to require more than five minutes of focus: such as caring for her daughter (AR 266), cooking for an hour three or four times a week (AR 267), and shopping (AR 299-300). The ALJ also noted that, although Plaintiff claimed she relied heavily on her sister for daily activities, Plaintiff "[took] care of the house" for three months while her sister was away. (AR 1219). Ultimately, although Plaintiff reported poor concentration, her mental health providers frequently assessed her concentration as normal. (*See* AR 28-29 citing, *e.g.*, AR 445-47 (Plaintiff's "attention span was normal [with] normal concentrating ability" although she had reported "poor energy, interest level, and focus"), 478-481, 486-495). The ALJ concluded that Plaintiff "is not as severe as she claims." (AR 31). So

Plaintiff's argument that the decision "did not account" for her own reports of diminished concentration and focus (Pl. Br. 10-11) is unavailing. Another ALJ may have weighed the evidence differently, but here the ALJ adequately explained why the RFC did not reflect those allegations.

However, that reasoning does not cover all of Plaintiff's alleged impairments. For example, Plaintiff alleged persistent headaches for which she needed to take occasional breaks in a dark room (*see* AR 53-54, 64, 238, 287). The ALJ acknowledged Plaintiff's allegations (AR 25-26) and referenced her "ongoing chronic headaches" during the listing analysis, but did not explicitly find them to be a severe impairment[5] (AR 21-22). The ALJ also summarized the medical evidence, noting several points at which Plaintiff complained of headaches. (*See*, *e.g.*, AR 27 citing AR 1047, AR 28 citing AR 1102-04). The ALJ mentioned an incident in December 2015, when she presented to the doctor with a headache that subsequently "disappeared." (AR 26-27 citing AR 696-700, 803). Apart from that, the ALJ did not point to any medical evidence contradicting Plaintiff's headache complaints. And unlike with Plaintiff's concentration allegations, there was no apparent contradiction between Plaintiff's daily activities and her alleged need to take breaks for headaches. *See Longerman v. Astrue*, No. 11 CV 383, 2011 WL 5190319, at *9-10 (N.D. Ill. Oct. 28, 2011) (explaining how limited daily activities can be consistent with persistent headaches); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("[O]ne can have awful headaches yet still dress and bathe."). Ultimately, the ALJ did not explain why Plaintiff's alleged need to take breaks for headaches was not accounted for in the RFC.[6]

---

[5] The ALJ must consider all impairments, severe and non-severe, in crafting the RFC. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

[6] The RFC did include a restriction of "no more than occasional exposure to loud noise" (AR 25). Although loud noises may have exacerbated the headaches, the ALJ did not explain how the absence of loud noise would alleviate Plaintiff's symptoms, if that was the intent of this limitation. *See Book v. Saul*, No. 1:19-CV-323-JEM, 2020 WL 4727304, at *4 (N.D. Ind. Aug. 14, 2020) (ALJ failed to "explain how she concluded that the restriction of no loud noises would 'accommodate' the limitations caused by the headaches").

Perhaps the ALJ, finding that Plaintiff had exaggerated some of her other complaints, concluded on that basis that she was also exaggerating the headache complaints. If so, the ALJ needed to say that and explain why she believed that. The ALJ's general finding that her complaints were "not entirely consistent" with the evidence[7] (AR 26) was not sufficient for this purpose. *See* SSR 16-3p, 2016 WL 1119029 at *8 (ALJs must "*explain which of an individual's symptoms* [they] found consistent or inconsistent with the evidence") (emphasis added); *Persin v. Kijakazi*, No. 2:20-CV-447-JEM, 2022 WL 3225359, at *4 (N.D. Ind. Aug. 10, 2022) ("Having recited this medical evidence [of headaches] and making no other findings specific to Plaintiff's headache complaints, the ALJ failed to build a logical bridge to his conclusion that the complaints were exaggerated."); *Borum v. Saul*, No. 2:18-CV-185-JEM, 2019 WL 3369714, at *3 (N.D. Ind. July 25, 2019) ("To the extent the ALJ relied on [general] conclusions about Plaintiff's inconsistencies to ignore her allegations of headaches in crafting the RFC, her explanation for doing so was inadequate."). The same is true of Plaintiff's alleged panic attacks and bouts of depression. The case must be remanded for an appropriate explanation of how the ALJ considered these symptoms.

Plaintiff further argues that by rejecting the medical opinions addressing her mental limitations (*see* AR 29-30), the ALJ created an "evidentiary deficit" that requires remand. Pl. Br. 9 (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010)). Plaintiff does not contest the ALJ's analysis of the rejected opinions, and as the Commissioner points out, there is no *per se* requirement to adopt a medical opinion if the decision is properly explained and supported by substantial evidence. Def. Mem. 17-18 (citing *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir.

---

[7] Although this language appears inconsistent with the preponderance-of-the-evidence standard for determining disability, the Court does not reverse on this ground. The Court's review suggests that "the ALJ merely used a polite way to say the weight of the evidence did not support all her claims." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

2007)). However, a situation such as this – where an ALJ rejects the medical opinions on point, and many of the claimant's allegations – leaves the ALJ in the difficult position of devising limitations from scratch, often from a sparse or ambiguous record. *See*, *e.g.*, *Giboyeaux v. Saul*, No. 2:19-CV-00076-JVB-SLC, 2020 WL 439943, at *8 (N.D. Ind. Jan. 9, 2020) (report and recommendation adopted) (remanding where the ALJ summarized the medical evidence, but with no medical opinion, "the ALJ appeared to craft the mental RFC out of whole cloth"). On remand, if the record presents these same issues, the Court recommends that the ALJ procure an updated medical opinion addressing Plaintiff's mental capabilities.

## II.        Light Work

The ALJ found that Plaintiff was capable of light work with certain limitations, meaning she could do jobs that involve walking or standing for most of the workday. *See* 20 C.F.R. § 404.1567(b) (a job is classified as light work "when it requires a good deal of walking or standing"); SSR 83-10, 1983 WL 31251 (January 1, 1983) at *6 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). She could be asked to lift objects as heavy as 20 pounds, and to carry 10 pounds "frequently[8]." § 404.1567(b). Plaintiff argues the ALJ did not show how she could walk or stand for most of the workday, lift 20 pounds, or repeatedly carry 10 pounds.

The state agency consultants found that Plaintiff could satisfy the standing, walking, lifting, and carrying requirements of light work, based on another doctor's exam[9] that showed, among

---

[8] "Frequently" means "from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251 at *6.

[9] Although the consultants summarized other medical findings (*see* AR 96-97, 113-14), on the part of the form that asked the consultants to "explain" the exertional limitations "and how and why the evidence supports your conclusions and the specific facts upon which your conclusions are based," the consultants referenced only one exam. (*See* AR 102, 117). Assuming the consultants relied on other evidence not listed in that section, their analysis suffers from the same flaws as the ALJ's. For the reasons described in this opinion, even a generous reading of the consultants' opinions does not explain how they concluded that the medical evidence showed she could do light work.

9

other findings, normal muscle strength. (AR 101-02, 116-17). However, the consultants' summary of that exam also showed decreased range of motion in the cervical and lumbar spine; tenderness in the spine; limited range of motion in the shoulder and left knee; and "unsteadiness" walking heel-to-toe. (AR 102, 117). The ALJ relied on the consultants' opinions that Plaintiff could do light work, finding them "persuasive" because of Plaintiff's "conservative" treatment, the fact that she did not use a cane, the fact that she stopped her last job because she was terminated rather than because of injury, and because there were many normal examination findings in areas such as gait and stance. (*See* AR 29-30). The ALJ added limitations on overhead reaching and avoiding "hazards" such as dangerous machinery and unprotected heights. (AR 25, 30).

Some of the ALJ's reasoning here was apparent. The ALJ observed that Plaintiff "walks without an assistive device," which was corroborated within the medical record. (*See* AR 30 citing AR 1102, 1123). Those notes are contrary to Plaintiff's allegation that she needed a cane to walk her dogs walk around the block (AR 55, *see also* AR 316-17 (Plaintiff checked a box indicating that she used a cane, and could walk only about 50 feet without stopping to rest)).[10] On these facts, the Court can trace the ALJ's reasoning that the absence of a cane suggested Plaintiff's walking was better than she alleged.

However, there is a big difference between walking on a limited basis, with or without a cane, and walking for six hours during a workday. The ALJ repeatedly relied on the fact that Plaintiff frequently showed normal gait, station, and balance. (*See* AR 27-29). But it is well-established that the ability to walk in the context of a brief examination is not the same as walking for a long distance, or for hours on end. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("Scott successfully walked 50 feet without a cane within the confines of her office, but that brief

---

[10] The ALJ directly asked Plaintiff whether she had brought a cane to the hearing, and Plaintiff replied: "No. I should have, but I did not bring one." (AR 46).

excursion hardly demonstrates an ability to stand for 6 hours (and neither does Scott's testimony that she could walk 2 blocks)."); *see also Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The ALJ overstated findings from three diagnostic tests to discredit Gerstner's complaints . . . [Gerstner never claimed] that her condition totally impaired the abilities tested in these exams. Instead, she said that her pain was triggered by prolonged sitting, standing, or activity and stress."); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Dr. Mayer noted that Murphy's gait and tandem gait had returned to normal, but that description is not informative as to whether Murphy could perform light work."). Similarly, the fact that Plaintiff may not have needed a cane or walker for her limited walking at home does not show that she could walk for several hours. *Rainey v. Berryhill*, 731 F. App'x 519, 523 (7th Cir. 2018) (ALJ erred by "extrapolating from [a doctor's] bare notation—that [the claimant] could walk more than 50 feet without a cane—[to] the conclusion that he could stand and walk unassisted for six of eight hours in a work day.").

The ALJ also alluded to Plaintiff's "conservative" treatment – referring to narcotic medication and injections – as evidence that her claims were exaggerated. The record indicates that Plaintiff repeatedly refused to consider surgery (*see*, *e.g.*, AR 742, 1013). That said, it is questionable whether narcotic drugs are a conservative treatment. *See Jason S. v. Saul*, No. 18 C 8371, 2020 WL 291381, at *5 (N.D. Ill. Jan. 21, 2020) ("[T]he fact that Claimant's treaters prescribed powerful narcotics suggests that – unlike the ALJ – they accepted what Claimant said about his pain.") (citing *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014)). Frequently, Plaintiff's doctors acknowledged or even affirmed her complaints of severe pain as they prescribed the medication and injections. (*See, e.g.,* AR 933-35, 1026 (Plaintiff "has been suffering significantly"), 1082 ("Her pain returned with a vengeance after the diagnostic injection.")). Although the refusal to consider surgery might have undermined Plaintiff's most severe

11

allegations, given the extensive record of other treatments, it was a "tremendous leap" to the conclusion that she can do light work, which was not adequately explained by the ALJ. *Rainey*, 731 F. App'x at 523. As with Plaintiff's headaches, it appears that the ALJ may have ignored some of Plaintiff's complaints because her allegations in other areas had been inconsistent with the evidence. On remand, if the ALJ seeks to makes the same inference, the ALJ must say so and explain her reasoning. *See* SSR 16-3p, 2016 WL 1119029 at *8.

### III.     Allegations of Pain

Although the case is remanded on other grounds, one other issue warrants discussion. The ALJ did not adequately explain how pain factored into Plaintiff's limitations. For example, in finding that she could lift and carry 10 pounds frequently, the ALJ relied on findings of "normal strength." (*See, e.g.,* AR 29-30 citing AR 500, 1123-24). Although that could be seen to contradict Plaintiff's allegation that she could not lift anything heavier than a bottle of shampoo (AR 56), it does not show that she could lift and carry 10 pounds for several hours a day. Plaintiff alleged she was in "constant, aching pain." (AR 53). The ALJ did not seem to consider that even if a person with a bad back had the strength to lift something, it could still be very painful to lift repeatedly, day after day. *See Joseph D. v. Saul,* No. 20 C 2827, 2021 WL 2136357, at *7 (N.D. Ill. May 26, 2021) ("Essentially, the ALJ rejects the alleged extent of plaintiff's pain by focusing too narrowly on objective medical findings. While many objective findings are mild, there is a cumulative affect that the ALJ seems to have ignored.").

This error is magnified because Plaintiff suffers from fibromyalgia (*see* AR 21), and "often there is no objective medical evidence indicating the presence or severity of fibromyalgia." *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020). On remand, the ALJ must consider all the ways in which Plaintiff's alleged pain could limit her, including the "duration, frequency, and intensity" of

her pain (SSR 16-3p, 2016 WL 1119029 at *7-8), and the pain in combination with her other impairments, *see Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 19] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 13th day of September, 2022.

                                          s/ Joshua P. Kolar
                                          MAGISTRATE JUDGE JOSHUA P. KOLAR
                                          UNITED STATES DISTRICT COURT